## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

CHRISTOPHER MCLAUGHLIN, individually,   )
and as parent and next friend of J.M., L.M.,   )
and F.M., minor children, and SARAH   )
MCLAUGHLIN, individually, and as   )    Case No. 4:21-cv-00096-GKF -SH
parent and next friend of J.M., L.M., and F.M.,   )
minor children,   )
                     Plaintiffs,   )
  )
vs.   )
  )
FORD MOTOR COMPANY,   )
  )
                   Defendant.   )

## FORD MOTOR COMPANY'S OMNIBUS MOTION IN LIMINE
## AND BRIEF IN SUPPORT

MCAFEE & TAFT, PC

By      s/ Andrew L. Richardson
             Mary Quinn Cooper, OBA #11966
             Andrew L. Richardson, OBA #16298
             Dru A. Prosser, OBA #32487
             Two West 2nd Street, Suite 1100
             Tulsa, OK 74103
             maryquinn.cooper@mcafeetaft.com
             andrew.richardson@mcafeetaft.com
             dru.prosser@mcafeetaft.com
             (918) 587-0000; (918) 599-9317 (fax)

             And

             Paul F. Malek
             Huie Law
             3291 US Highway 280, Suite 200
             Birmingham AL  35243
             pmalek@huielaw.com
             (205) 297-8850; (205)251-1256 (fax)
             Attorneys for Defendant Ford Motor Company

July 21, 2023

# TABLE OF CONTENTS

A.  LEGAL STANDARDS ........................................................................... 1

B.  MOTIONS IN LIMINE .......................................................................... 2

    1.  STATEMENTS REGARDING "CONSUMER SAFETY" AS PURPOSE OF SUIT ....... 2

    2.  USE OF UNRELATED, HISTORICAL FORD DOCUMENTS IRRELEVANT TO THE
        SUBJECT F-150 ............................................................................. 3

    3.  UNRELATED PRODUCT LIABILITY LAWSUITS ............................................. 5

    4.  UNRELATED RECALLS, SAFETY CAMPAIGNS, OR SERVICE BULLETINS ........ 5

    5.  UNDISCLOSED DEFECTS AND/OR LIABILITY THEORIES ............................... 6

    6.  STANDARDS, CODES, OR REGULATIONS ALLEGEDLY VIOLATED BY FORD .. 6

    7.  LOBBYING ACTIVITIES AND/OR ALLEGE INFLUENCE ON NHTSA,
        INCLUDING RELATED TO THE PROMULGATION OF FMVSS 216 ................. 7

    8.  EXPERT TESTIMONY ON WHETHER THE SUBJECT F-150 WAS
        "UNREASONABLY DANGEROUS" ..................................................... 9

    9.  EVIDENCE THAT POST-DATES THE DESIGN AND MANUFACTURE OF THE
        SUBJECT F-150 ......................................................................... 10

    10.  EVIDENCE OF FORD'S MARKETING AND ADVERTISEMENTS ...................... 12

    11.  PLAINTIFFS' FINANCIAL CONDITION ......................................................... 13

    12.  UNRELATED INFLAMMATORY REFERENCES TO FORD ................................ 13

    13.  REFERENCE TO IRRELEVANT FAMILIAR RELATIONSHIP BETWEEN BILL
         LEACH AND PARKER LEACH ........................................................ 14

    14.  INFLAMMATORY REFERENCES TO TOTAL PAYMENTS BY FORD TO EXPERT
         WITNESSES AND/OR THEIR FIRMS ............................................... 14

CONCLUSION ......................................................................................... 16

i

# TABLE OF AUTHORITIES

CASES

*Behler v. Hanlon,*
 199 F.R.D. 553 (D. Md. 2001) .................................................................. 15

*California Motor Transp. Co. v. Trucking Unlimited,*
 404 U.S. 508 (1972) ................................................................................... 8

*Eastern R.R. President's Conference v. Noerr Motor Freight, Inc.,*
 *365 U.S. 127 (1961)* ................................................................................... 8

*Elam v. Alcolac, Inc.,*
 765 S.W.2d 42 (Mo. Ct. App. 1988) *cert. denied,* 493 U.S. 817 (1989) ............... 15

*Graves ex rel. W.A.G. v. Toyota Motor Corp.,*
 2:09CV169KS-MTP, 2012 WL 28566 (S.D. Miss. Jan. 5, 2012) ........................ 11

*Griego v. State Farm Mut. Auto. Ins. Co.,*
 839 F. App'x 258 (10th Cir. 2020) ........................................................... 1

*Hellard v. Mid Century Ins. Co.,*
 519 F. Supp. 3d 1025 (N.D. Ok. 2021) .................................................... 1

*Kirkland v. General Motors Corp.,*
 521 P.2d 1353 (Okla. 1974) ..................................................................... 10

*Martin v. Interstate Battery Sys. of Am., Inc.,*
 12-CV-184-JED-FHM, 2016 WL 4401105, (N.D. Okla. Aug. 18, 2016) ............... 3

*Moody v. Ford,*
 506 F. Supp 823 (N.D. Okla. 2007) ..................................................*Passim*

*Smith v. United States Gypsum Co.,*
 612 P.2d 251(Okla. 1980) ......................................................................... 10

*Specht v. Jensen,*
 853 F.2d 805 (10th Cir. 1988)............................................................... 9, 10

*Strong v. E.L. DuPont de Nemours Co., Inc.,*
 667 F.2d 682 (8th Cir. 1981)..................................................................... 9

ii

*United Mine Workers v. Pennington,*
    381 U.S. 657 (1965) ................................................................................................. 8

*US Salt, Inc. v. Broken Arrow, Inc.*,
    No. CIV. 07-1988 RKH/JSM, 2008 WL 2277602, (D. Minn. May 30, 2008)
    aff'd, 563 F.3d 687 (8th Cir. 2009) ........................................................................ 6

**OTHER AUTHORITIES**

FED. R. CIV. P. 37 ................................................................................................. 6, 7

FED. R. EVID. 401 ............................................................................................... *Passim*

FED. R. EVID. 402 ............................................................................................... *Passim*

FED. R. EVID. 403 ............................................................................................... *Passim*

FED. R. EVID. 701 ................................................................................................. 10

FED. R. EVID. 702 ................................................................................................. 10

FED. R. EVID. 703 ................................................................................................. 10

ADV. CMTE. NOTES TO FED. R. EVID. 403 ........................................................... 2

U.S. Const., Amend I ............................................................................................ 8

COMES NOW, Ford Motor Company ("Ford"), Defendant in the above-styled and numbered cause, and respectfully moves the Court for an order *in limine*, restricting all parties, counsel, and witnesses called on behalf of either party from introducing, mentioning, or in any way referring to certain matters (whether through interrogation, *voir dire* examination, opening statements, arguments or otherwise, either directly or indirectly), and in support thereof, respectfully shows as follows.

## A.    LEGAL STANDARDS

"The purpose of a motion *in limine* is to allow the Court to decide evidentiary issues in advance of trial to avoid delay and ensure an evenhanded and expeditious trial." *Hellard v. Mid Century Ins. Co.*, 519 F. Supp. 3d 1025, 1027 (N.D. Okla. 2021).[1]  Decisions regarding the admission and exclusion of evidence are within the discretion of the district court. *Griego v. State Farm Mut. Auto. Ins. Co.*, 839 F. App'x 258, 260 (10th Cir. 2020).

Evidence is not relevant and therefore not admissible unless it has a "tendency to make a fact more or less probable than it would be without the evidence" and that "fact is of consequence in determining the action." Fed. R. Evid. 401, 402.  Although relevant evidence is generally admissible, it still may be excluded under the rules of evidence. The court may exclude otherwise relevant evidence, for example, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403. "Unfair prejudice within its context means an undue

---

[1] Throughout, unless otherwise noted, all emphases and alterations are added; all internal quotation marks, citations, and footnotes are omitted.

tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Adv. Cmte. Notes to FED. R. EVID. 403.

Accordingly, Ford respectfully requests that, before the *voir dire* examination of the jury panel has begun, before any opening statements are made to the jury, and before the introduction of any evidence, the Court instruct Plaintiff and all of Plaintiffs' witnesses to refrain from making any mention through interrogation, *voir dire* examination, opening statement, arguments or otherwise, either directly or indirectly, concerning any of the matters hereinafter set forth, without first approaching the bench and obtaining a ruling from the Court outside the presence and hearing of all prospective jurors and the jurors ultimately selected to try this case, with regard to the following:

**B.    MOTIONS IN LIMINE**

**1.    STATEMENTS REGARDING "CONSUMER SAFETY" AS PURPOSE OF SUIT**

Any mention of, reference to, or evidence suggesting this case is one brought to establish standards of consumer safety or to enforce consumer safety principles, that the reason for bringing this suit is based on a desire to enhance consumer safety, or that the jury's decision could protect society and/or make motor vehicles safer should be excluded because such arguments or statements are misleading and confusing to the jury.

The purpose of this suit is to collect money damages related to the allegedly defective design and manufacture of a nearly 20-year old vehicle. This suit is not brought on behalf of all consumers, or for the purposes of establishing consumer safety, or for any other such purpose, but only to collect money. Any such argument or statement by counsel is inflammatory and calculated to unfairly prejudice the rights of Ford and create bias and

2

sympathy in favor of Plaintiffs. Fed. R. Evid. 402, 403; *see also Martin v. Interstate Battery Sys. of Am., Inc.*, 12-CV-184-JED-FHM, 2016 WL 4401105, at *2 (N.D. Okla. Aug. 18, 2016) ("arguments or statements regarding consumer safety as the purpose of this litigation have no relevance to any of the claims in this case, and carry a substantial risk of unfair prejudice to defendants").

### 2.    USE OF UNRELATED, HISTORICAL FORD DOCUMENTS IRRELEVANT TO THE SUBJECT F-150

Defendants anticipate that, at trial, Plaintiffs may attempt to introduce old Ford documents, including documents from the 1960s. In *Moody v. Ford*—a case relating to the roof structure of a 1995 Ford Explorer—Plaintiffs' counsel sought to use a memorandum containing information about a "Roof Strength Study" that was created almost 35 years before the crash at issue, over 27 years before the production of the vehicle at issue, and several years before the National Highway Traffic Safety Administration ("NHTSA") promulgated the original version of FMVSS 216, the federal standard addressing roof crush resistance. *Moody v. Ford*, 506 F. Supp 823, 838-39 (N.D. Okla. 2007). Moreover, the study discussed convertibles and passenger cars, not light trucks or sport utility vehicles like the one at was issue. *See id.* at 838.

In *Moody*, this Court agreed with Ford that the roof strength study was irrelevant because it did not relate to the Ford Explorer and was not prepared in a relevant time period, and there was no "relevance to the mindset in the 1990s of a 1968 document." *Id.* at 838-39. Despite the Court's ruling that the 1968 memorandum was excluded, counsel violated the Court's order in his opening statement, telling the jury:

3

[Y]ou'll learn from Ford's own documents that Ford started understanding that when the law was passed in 1968 requiring manufacturers to put in upper restraints, the shoulder harnesses, that that caused the people in vehicles to be seated directly such that they didn't move during an accident and made them very vulnerable to roof collapse. And with the advent of these shoulder harnesses beginning in 1968—and you'll see the documents from Ford.

*Id.* at 839.

Discovery conducted in this case suggests that Plaintiffs may seek to present similar evidence of historical documents and/or statements in an effort to show that Ford "understood" the purported relationship between roof strength and occupant protection in rollover crashes in the 1960s and 1970s—when the issue was just beginning to be studied by Ford and other manufacturers, more than three decades before the design and manufacture of the 2004 F-150 at issue in this lawsuit. *See, e.g.,* **Exhibit 1**, Corporate Rep. Dep. of Chris Eikey, 127:18-23 ("And as it pertained to Ford in that timeframe [the 1960s and early 1970s], when this phenomenon or issue was first beginning to be looked at, was it Ford's position at that point in time that there was a correlation between roof crush and occupant injury in a rollover?"), 128:24-129:3 ("So what's the early document or representation from Ford that you can point me to where Ford says we don't believe that there is any correlation between roof crush and occupant injury in a rollover?"), 131:22-25 ("During that time period [prior to the adoption of FMVSS 216 in 1971], did Ford believe that occupants that were belted were more susceptible to injury during a rollover than nonbelted occupants?").

Documents and other evidence of testing and analysis conducted by Ford in the 1960s and 1970s—an era when crash data and test technology was limited—relating to vehicles that are not remotely similar to the subject F-150 are irrelevant to Plaintiffs' claims here and should be excluded. FED. R. EVID. 401. Allowing such evidence would be unduly prejudicial to Ford, and would only tend to mislead and confuse the jury. *See* FED. R. EVID. 403 ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."). For these reasons, Ford moves this Court to exclude any evidence or reference to historical Ford documents that are unrelated to the 2004 F-150 at issue here.

### 3. UNRELATED PRODUCT LIABILITY LAWSUITS

Any reference to or evidence, testimony or argument regarding other unrelated product liability cases, such as Takata airbag recall, GM ignition switch, Volkswagen emissions recall, Toyota Unintended Acceleration, Firestone tires, Ford Pinto, GM fuel tanks in pickup trucks, Johnson & Johnson Vaginal Mesh cases, etc. are irrelevant to the issues in this case and should be excluded. Moreover, the probative value, if any, of such information is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and prolongation of the trial that its admission into evidence would cause. FED. R. EVID. 401, 402, and 403.

### 4. UNRELATED RECALLS, SAFETY CAMPAIGNS, OR SERVICE BULLETINS

The evidence in this matter should be limited to the 2004 Ford F-150 and to the alleged defects pled in this lawsuit. Accordingly, any mention of, reference to, or evidence regarding any alleged recalls, service campaigns, or other similar matters which are

unrelated and/or inapplicable to the subject 2004 F-150, to Plaintiffs' defect allegations in this case, the subject accident, and/or Plaintiffs' injuries and damages, should be excluded. Any attempts to offer such evidence would have no materiality or relevance to the issues of this lawsuit, would be untimely, and could only serve to unfairly prejudice and unfairly surprise Ford. FED. R. EVID. 401-403.

5.    UNDISCLOSED DEFECTS AND/OR LIABILITY THEORIES

Any mention of, reference to, or evidence regarding any alleged defects of the subject vehicle that have not been previously disclosed to Ford or are not alleged to be causally related to Plaintiffs' injuries and damages are irrelevant and should be excluded. The only active defect theory or allegation offered by Plaintiff's experts relates to the subject F-150's roof structure. Evidence of any other alleged defects or problems has no materiality or relevance to the issues of this lawsuit, was not timely disclosed, and could only serve to unfairly prejudice and unfairly surprise Ford. FED. R. EVID. 403, Fed. R. Civ. P. 37. See, e.g., *US Salt, Inc. v. Broken Arrow, Inc.*, No. CIV. 07-1988 RKH/JSM, 2008 WL 2277602, at *5 (D. Minn. May 30, 2008) aff'd, 563 F.3d 687 (8th Cir. 2009) (excluding undisclosed damages evidence that "came unexpectedly on the eve of trial and only after the Court excluded [plaintiff's] evidence on lost profits").

6.    STANDARDS, CODES, OR REGULATIONS ALLEGEDLY VIOLATED BY FORD

Any mention of, reference to, or evidence regarding any standard, code or regulation allegedly violated by Ford in connection with the design, manufacture and/or marketing of the vehicle and/or the incident in question would be improper since no such codes, standards or regulations have ever been identified by Plaintiffs in discovery. *See* **Exhibit**

**2**, Plaintiffs' Answers to Ford's Interrogatories, Answer to Interrogatory No. 5 (failing to identify any such standards, codes, or regulations allegedly violate by Ford). FED. R. EVID. 402, 403; FED. R. CIV. P. 37.

### 7.    LOBBYING ACTIVITIES AND/OR ALLEGED INFLUENCE ON NHTSA, INCLUDING RELATED TO THE PROMULGATION OF FMVSS 216

Ford moves to exclude any argument and/or evidence that Ford and/or other automobile manufacturers attempted to influence NHTSA not to adopt certain standards and/or to adopt standards that are more favorable to automobile manufacturers at the expense of consumer safety. Such references are intended to create unfair prejudice against Ford by suggesting to the jury that federal regulations provide insufficient protection to consumers and were only passed because NHTSA is somehow beholden Ford and other automobile manufacturers.

For example, in *Moody*, Plaintiffs' counsel "criticized FMVSS 216 and implicated Ford as a critical factor in the alleged inadequacy of this standard." *Moody*, 506 F. Supp. at 840. Counsel argued in both opening and closing that Ford was responsible for alleged inadequacy of FMVSS 216.

> [FMVSS] 216 is a standard that's promulgated by the National Highway Traffic Safety Administration. Think about it. You heard Mr. Forrest say, who is involved in NHTSA? The auto manufacturers. Who lobbies NHTSA? The auto manufacturers. Where do NHTSA employees go when they leave there? Auto manufacturers. That is what's going on.

*Moody*, 506 F. Supp. at 841.

When NHTSA proposes a Federal Motor Vehicle Safety Standard ("FMVSS"), it first publishes a "Notice of Proposed Rulemaking" in the Federal Register seeking

comments from anyone and everyone, including members of the general public, who wish to comment.  Plaintiffs and their experts should not be permitted to argue to the jury that Ford and/or others in the automobile industry acted improperly by setting forth their views on what standards would be appropriate because (1) NHTSA requested such comments and (2) NHTSA is free to accept or reject any comment made by anyone, including those from the automobile industry.

Further, any such argument would have a chilling effect on the right of free speech and the flow of information to NHTSA.  The Petitioning Clause of the First Amendment fully protects citizens' efforts to persuade public officials in all departments of government to adopt a particular position with respect to the passage or enforcement of laws.  "Congress shall make no law . . . abridging the right of the people . . . to petition the government for a redress of grievance."  U.S. Const., amend. I.  Not even ordinary liability, much less punitive liability, may be imposed on the basis of such activity.  *See, e.g., California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510-11, 513-14 (1972); *United Mine Workers v. Pennington,* 381 U.S. 657, 669-70 (1965); *Eastern R.R. President's Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 135-40 (1961).

For these reasons, Ford moves this Court to exclude any evidence that Ford or other manufacturers influenced or attempted to influence any governmental agencies, and specifically NHTSA.  Plaintiffs' experts and counsel may offer opinions and argument as to why they believe the standard is inadequate without resorting to inappropriate suggestions of undue influence or improper collusion between Ford and NHTSA.

8.    **EXPERT TESTIMONY ON WHETHER THE SUBJECT F-150 WAS "UNREASONABLY DANGEROUS"**

Ford anticipates that Plaintiffs' expert witnesses will testify that the subject Ford F-150 was "unreasonably dangerous." Plaintiffs' expert Brian Herbst stated exactly this in his Rule 26 report, writing, "The design of the subject 2004 Ford F150 Regular Cab is defective and unreasonably dangerous . . . ." Such opinions are improper legal conclusions that invade the province of the jury as the fact-finder and merely tell the jury what result to reach. As such, they should be excluded. *See, e.g., Specht v. Jensen,* 853 F.2d 805, 808 (10th Cir. 1988) (court held that expert "testimony that articulates the ultimate principles of law governing the deliberation of the jury" was inadmissible because it allowed the expert to "direct[] a verdict, rather than assist[] the jury's understanding and weighing of the evidence.").

For example, in *Strong v. E.L. DuPont de Nemours Co., Inc.,* 667 F.2d 682, 685-86 (8th Cir. 1981), the court upheld the trial court's exclusion of expert opinion testimony that an alleged lack of warnings rendered a product "unreasonably dangerous." The court noted "that the question of whether the lack of warnings rendered the [products] unreasonably dangerous is not the kind of issue on which expert assistance is essential for the trier of fact. The jury was capable of drawing its own inferences from the available evidence." *Id.* at 686.

Likewise, on the issue of whether the subject 2004 F-150 is unreasonably dangerous, the jury is capable of drawing its own inferences from the available evidence. Indeed, the jury should be instructed to reach its own conclusion as to whether

the F-150 was dangerous to an extent beyond that which would be contemplated by the ordinary user or consumer who purchased it with ordinary knowledge common to the community as to the product's characteristics. *See Smith v. United States Gypsum Co.,* 612 P.2d 251, 253 (Okla. 1980); *Kirkland v. General Motors Corp.,* 521 P.2d 1353, 1362-63 (Okla. 1974). This Court should not allow "the expert to supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence." *Specht,* 853 F.2d at 808. Under FED. R. EVID. 701-03, this Court should exclude any expert testimony that the subject F-150 was allegedly "unreasonably dangerous."

### 9. EVIDENCE THAT POST-DATES THE DESIGN AND MANUFACTURE OF THE SUBJECT F-150

The Court should not permit Plaintiffs, Plaintiffs' witnesses, or counsel to make any mention of, make reference to, or put on any evidence that post-dates the design and manufacture of the 2004 F-150—including NHTSA's 2005 notice of proposed rulemaking regarding FMVSS 216, the amendment of FMVSS 216 in 2009, Ford's internal and external communications between and among Ford and NHTSA relating to the proposed changes to FMVSS 216, Ford's comments and/or position regarding the proposed changes to FMVSS 216, and/or any evidence relating to the design and manufacture of subsequent model year vehicles—is not relevant to Plaintiff's claims and should be excluded. FED. R. EVID. 401-403.

Ford anticipates Plaintiffs will seek to introduce such evidence at the trial of this matter. For example, Plaintiffs' counsel questioned Ford's corporate representative about the 2009 amendments to FMVSS 216 and whether Ford opposed the changes to the rule.

**Ex. 1** at 171:14-173:21. Additionally, Plaintiffs' retained expert witness, Brian Herbst, testified that Ford could have made the roof stronger and "they do now." **Exhibit 3**, Herbst Dep., 92:6-93:7.

These issues have no relevance to Plaintiffs' claims related to the subject 2004 F-150, and allowing Plaintiffs to present such evidence at trial would be unduly prejudicial to Ford and would require deviations into collateral matters that would likely mislead and confuse the jury. *See* FED. R. EVID. 401-403 ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."); *see, e.g.*, *Graves ex rel. W.A.G. v. Toyota Motor Corp.*, 2:09CV169KS-MTP, 2012 WL 28566, at *5 (S.D. Miss. Jan. 5, 2012) (precluding "the introduction of any references to new FMVSS 216 standard, other safety ratings, and other evidence and testimony pertaining to the internal or external communications between Toyota, NHTSA, or other automakers regarding changes in federal legislation or regulations to FMVSS 216").

*Graves* was a product liability case relating to a 1995 Toyota 4Runner. *See id.* There, the court properly recognized that "whether the subject 1995 4Runner was defectively designed must therefore be judged against the technological context existing at the time of manufacture." *Id.* at *3. In resolving this question, the court noted that introduction of evidence post-dating the design and manufacture of the vehicle in question would be both unhelpful to the jury and prejudicial to Toyota. *Id.* at *5 (holding that IIHS safety ratings do "not help the jury in determining whether the vehicle was defective—the ratings do not establish whether the 4Runner roof (or any roof) is defective, they merely

11

establish what IIHS believed to be "Good," "Acceptable," "Marginal," and "Poor" in 2009," and that "Toyota cannot be held to this ratings system (or any ratings system) that was not in place at the time the subject vehicle was manufactured.")

The same is true here—evidence that post-dates the design and manufacture of the subject 2004 Ford F-150 is not helpful to the jury in judging the vehicle against the technological context existing at the time of manufacture, and introduction of such evidence would prejudice Ford by suggesting it should be held to standards that did not exist at the time. FED. R. EVID. 401-403.

### 10.    EVIDENCE OF FORD'S MARKETING AND ADVERTISEMENTS

Plaintiffs have served discovery requesting documents relating to advertising and marketing of the subject F-150 and questioned Ford's corporate representative regarding Ford's advertising materials. Ford anticipates that Plaintiffs will attempt to introduce these materials as well as marketing and advertising materials for other vehicles. This evidence is irrelevant and therefore inadmissible. *See* FED R. EVID. 402 ("Irrelevant evidence is not admissible.").

There is no allegation by Plaintiffs in this case of false advertisement or misrepresentation in connection with the subject F-150. While Plaintiffs have alleged Ford "negligently design[ed] the Subject Vehicle from a marketing standpoint," discovery in this lawsuit has not revealed the existence of any Ford F-150 advertisement that was allegedly relied upon by Plaintiffs. Additionally, no expert has advanced any theory that relies upon Ford's advertisement or marketing of the subject F-150. Evidence of Ford's marketing or advertising of any other Ford vehicle, or the marketing or advertising of other

automobile manufacturers, is irrelevant and could only be used in an attempt to inflame the jury and mislead them as to the true issues. Pursuant to FED. R. EVID. 401-03, Ford moves to exclude any evidence of marketing or advertising materials.

### 11.    PLAINTIFFS' FINANCIAL CONDITION

The Court should preclude any mention of, reference to, or evidence of documents regarding Plaintiffs' finances, inability to pay medical or other expenses, non-existent or insufficient insurance, or any other matter relating to Plaintiffs' financial status, since such matters have no relevance or probative value to any issue which is in question in this case and is calculated to cause unfair surprise in the minds of the jury against Ford. FED. R. EVID. 401-403.

### 12.    UNRELATED INFLAMMATORY REFERENCES TO FORD

The Court should preclude any mention of, reference to, or evidence suggesting that Ford is a "foreign" corporation or that its employees and witnesses are "not from around here"; that Ford takes advantage of the poor or the unsophisticated; that Ford is callous, unconcerned about safety, or that it finds rates or injuries or deaths in its vehicles "acceptable" or "good enough"; or any other statement, argument, inference or comment which would tend to create or show that there is a conflict between Ford's business and consumers; or that Ford is greedy or overreaching, because such statements, inferences and arguments are calculated solely for the purpose of creating unfair prejudice against Ford establishing a bias in the minds of the jury against Ford, or inflaming the emotions of the jury against Ford and in favor of Plaintiff. FED. R. EVID. 401-403.

### 13.    REFERENCE TO IRRELEVANT FAMILIAL RELATIONSHIP BETWEEN BILL LEACH AND PARKER LEACH

One of Ford's retained witnesses in this case is Dr. Elizabeth Raphael, principal engineer of Delta V Biomechanics. Delta V Biomechanics employs several supporting engineers, including Parker Leach, who is the son of Bill Leach, an attorney in McAfee & Taft's Tulsa office. Neither Bill nor Parker Leach are involved in this lawsuit. During Dr. Raphael's deposition, she was questioned about Delta V's employment of Parker Leach, and regarding the relationship between Parker Leach and Bill Leach. *See* **Exhibit 4**, Raphael Dep., 79:17-80:10.

The fact that one of Delta V's employees is the son of one of McAfee & Taft's attorneys is wholly irrelevant to any issue in this lawsuit, especially where neither individual is involved in this case. Introduction of this information at trial could only be calculated to create unfair prejudice against Ford by suggesting some sort of inappropriate relationship exists between Ford's experts and its lawyers. Accordingly, the fact that Delta V Biomechanics employs Parker Leach, and the existence of Parker Leach's familial relationship with Bill Leach, should be excluded as irrelevant and unfairly prejudicial to Ford. FED. R. EVID. 401-403.

### 14.    INFLAMMATORY REFERENCES TO TOTAL PAYMENTS BY FORD TO EXPERT WITNESSES AND/OR THEIR FIRMS

Plaintiffs' counsel has spent significant time in discovery delving into the cumulative amount of payments made by Ford to retained expert witnesses and their various firms in previous years. However, evidence of total compensation and involvement of expert witnesses in other Ford litigation is irrelevant. "[T]o tender as evidence of

14

impeachment that a sum of money was paid as recompense for expert services—per se—proves nothing and discredits nothing." *Elam v. Alcolac, Inc.,* 765 S.W.2d 42, 199-202 (Mo. Ct. App. 1988) (affirming trial court's refusal to allow evidence of fees received by plaintiffs' experts for services in other cases as an irrelevant and collateral inquiry, more prejudicial than probative), *cert. denied,* 493 U.S. 817 (1989). Such evidence should be excluded from the trial of this matter. FED. R. EVID. 401-403.

Allowing presentation of evidence of total earnings for Ford's experts or their firms would not only be prejudicial, but would require deviations into collateral matters and should therefore be excluded. FED. R. EVID. 403; *see also Elam,* 765 S.W.2d at 199 ("Where the inquiry into interest and prejudice as proposed and tendered, however, itself augurs prejudice more than probative purpose, the court may deny its exercise."); *Behler v. Hanlon,* 199 F.R.D. 553, 562 (D. Md. 2001) (broad disclosure of experts' compensation "would provide the jury with little information relevant to a fair assessment of the expert's credibility, while concomitantly introducing the real possibility of creating confusion, distraction and even prejudice.").

By way of example, Plaintiffs' counsel questioned one of Ford's retained experts, Dr. Michelle Vogler, at length about the total amount of money Ford has paid her firm, DRE, from 1999 through 2012. **Exhibit 5**, Vogler Dep., 135:21-138:3. Later in her deposition, after asking Dr. Vogler to identify any reliance materials developed by another firm, Exponent, counsel asked if she was aware of the total amount of money paid to Exponent from 1996 and 2017, suggesting the figure was $155 million. *Id.* at 141:1-142:1. It was clear that counsel was not concerned with whether the witness could actually verify

these figures—all he was interested in was the shock value of the figures presented without context. *Id.* at 139:17-24 ("Do you think that $23 million is a lot of money?").

Presentation of these figures to the jury would be designed purely to prejudice the jury against Ford and its retained expert witnesses. Additionally, such evidence would necessitate excessive venture into collateral issues, such as the going rates for experts at the time, the number of cases, employees, and hours that generated those payments, how much of the payments were related to litigation versus non-litigation work, just to name a few. The amount of money DRE, Exponent, or any other firm has historically received from Ford has no relevance to the credibility of the specific experts who will testify in this case, and the Court should exclude such evidence because it is irrelevant, would likely distract and confuse the jury, and is more prejudicial than probative. FED. R. EVID. 401-403.

## CONCLUSION

The Ford Defendants respectfully ask this Court that the above and foregoing Motions *in limine* be, in all things, granted and the Court instruct all parties and the witnesses for either party to act accordingly, and for such other and further relief to which Defendants may show itself to be justly entitled.

MCAFEE & TAFT, PC

By     s/ Andrew L. Richardson
           Mary Quinn Cooper, OBA #11966
           Andrew L. Richardson, OBA #16298
           Dru A. Prosser, OBA #32487
           Two West 2nd Street, Suite 1100
           Tulsa, OK 74103
           maryquinn.cooper@mcafeetaft.com
           andrew.richardson@mcafeetaft.com
           dru.prosser@mcafeetaft.com
           (918) 587-0000; (918) 599-9317 (fax)

           And

           Paul F. Malek
           Huie Law
           3291 US Highway 280, Suite 200
           Birmingham AL  35243
           pmalek@huielaw.com
           (205) 297-8850; (205)251-1256 (fax)

           Attorneys for Defendant Ford Motor Company

## CERTIFICATE OF SERVICE

     I hereby certify that on the 21st day of July, 2023, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

     Clark O. Brewster
     Montgomery L. Lair
     Mbilike M. Muafulirwa
     BREWSTER & DE ANGELIS, PLLC
     2617 East 21st Street
     Tulsa, OK 74114
     *Attorneys for Plaintiffs*

               s/ Andrew L. Richardson